UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
JOSEPH A. LIGOTTI, JR. and          )
PAULA LIGOTTI,                          )
                                            )
        Plaintiffs,                        )
                                            )
v.                                            )          Civil Action No. 1:16-cv-12095-MLW
                                            )
DITECH FINANCIAL LLC,              )
                                            )
                                            )
        Defendant.                         )
_____ )

## DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Ditech Financial LLC f/k/a Green Tree Servicing LLC ("Ditech") moves pursuant to

Fed.R.Civ.P. 12 (c) for judgment on the pleadings.

## INTRODUCTION

Joseph and Paula Ligotti (collectively the "Ligottis"), are current residents at 133 County

Road, Tewksbury, Massachusetts  (the "Property").  Though this actions the Ligottis seek to

recover their alleged damages from their current loan servicer Ditech.  Specifically, the Ligottis

claim that

- o  Ditech's predecessor in interest GMAC Mortgage Corporation ("GMACM")

  agreed to a Two-Step "Home Affordable Modification Program – Loan Workout

  Plan" (the "Workout Plan") that required "three (3) trial payments."  (Complaint

  ("Comp.") ¶ 11, **Exhibit D**);

- o  the Ligottis made "all three trial plan payments to make the loan modification

  immediately permanent;" (Id.);

○ but before the loan was permanently modified, the loan was transferred to Ditech which "failed and refused to apply mortgage payments when received." (Comp. ¶ 15); and

○ as a result, the Ligottis seek damages for Ditech's alleged violation of several federal statutes including Real Estate Settlement Procedures Act ("RESPA") (Count III), Fair Debt Collection Practices Act ("FDCPA") (Count IV), and Home Affordable Modification Program ("HAMP") (Count V); and for common law claims of breach of the Workout Plan, breach of the covenant of good faith and fair dealing implied therein (Counts I and VI), and for an accounting (Count II).

All of these claims fail as a matter of law.  In particular,

○ **Violation of the FDCPA**.  The Ligottis have alleged that Ditech was assigned the mortgage before they defaulted.  As a result, Ditech is not a "debt collector" under the statute.

○ **Violation of RESPA**.  The Ligottis have failed to identify with any specificity a qualified written request ("QWR") issued to Ditech; and even if they did the Ligottis have failed to alleged any damages which relate to Ditech's failure to respond to the QWR.

○ **Violation of HAMP**.  There is no private cause of action under HAMP and therefore this claim should be dismissed.

○ **Accounting**.  The claim for accounting fails because absent a fiduciary duty, Ditech has no obligation to provide an accounting to the Ligottis.

o **Breach of Contract and Covenant of Good Faith**.  These claims fail because the Plaintiffs have failed to allege any consideration to support the alleged contract and even if they did, Ditech complied with the terms of the contract.

## FACTUAL ALLEGATIONS SET FORTH IN THE COMPLAINT

OnAugust 22, 2005, the Ligottis signed a note payable to GMAC Mortgage Corp. ("GMAC") in the principal amount of $338,373 (the "Note") and a mortgage granting Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for GMAC a security interest in Property (the "Mortgage").  (A copy of the Note and Mortgage is attached as **Exhibit A**;  see also Complaint ("Comp.") ¶ 6).

MERS assigned the Mortgage to GMAC and through a "Home Affordable Modification Program – Loan Workout Plan" (the "Workout Plan") GMAC "resolved all mortgage defaults." (Comp. ¶ 10, See **Exhibit D**).  The Workout Plan[1] warned that

> At this point, however it is important for you to understand that you have not yet met all of the qualifications for a Permanent Modification.  In order to qualify you must first comply with the provisions of this Workout Plan and provide us with any required documentation.  We will then evaluate your qualifications for a permanent modification.

With the Workout Plan, GMAC included a "Trial Period Plan (Step One of Two-Step Documentation Process)" ("Trial Period Step One").  See **Exhibit D**.  The Trial Period Plan Step One provided among other things that the:

> Workout Plan is not a modification of my loan and my loan will not be modified unless or until I meet all conditions required for modification.  I understand and agree that the Lender will not be

---

[1] The terms of the Workout Plan are in stark contrast to the allegations in the complaint.  In the Complaint, the Plaintiffs have alleged that the "Workout Plan" was a "permanent modification." (Comp. ¶ 7).  But by its terms, the completion of the obligations under the Workout Plan is a condition precedent to the offering of a new permanent loan modification agreement.  (See **Exhibit D**).

obligated or bound to modify my loan if I fail to meet any one of
the requirements under this Workout Plan.

* * *

The Lender will provide a Modification Agreement for my
signature which will modify my loan as necessary…Upon
execution of a Modification Agreement by the Lender and me this
Workout Plan shall terminate and the loan as modified by the
Modification Agreement shall govern the terms between the
Lender and me for the remaining terms of the loan.

After the Workout Plan was issued, by assignment dated April 25, 2013, GMAC transferred the

Mortgage to Ditech.  (Comp. ¶ 12; see also **Exhibit B**, a copy of the Assignment).

"The Plaintiffs" "remitted to GMAC Mortgage through legal counsel all three trial

payments" and by letter dated May 13, 2013, Ditech issued  a "Home Affordable Modification

Agreement (Step Two of Two-Step Documentation Process)" ("Permanent Loan Modification

Offer").  (**Exhibit C**, a copy of the Permanent Loan Modification Offer).  The Permanent Loan

Modification Offer instructed the Ligottis that:

"[T]o accept this offer your client must sign and return both copies of the Modification

Agreement…by 6/12/2013;" and warned the Ligottis that

[T]he Loan Documents will not be modified unless and until (i) I
receive from the Lender [Ditech] a copy of this Agreement signed
by the Lender, and (ii) the Modification Effective Date
(06/01/2013) has occurred.  I understand and agree that the Lender
will not be obligated or bound to make any modification of the
Loan Documents if I fail to meet any one of the requirements
under this Agreement.

(Id.)

The Ligottis made all of their monthly payments, GMAC and Ditech "accepted all

monthly payments" but Ditech "refused to apply the mortgage payments" and instead has been

issuing negative credit  reports.  (Comp. ¶¶ 13-16).

More than two years after the Modification Effective Date (i.e. June 1, 2013) in or around December 2015, Ditech "refused, rejected and returned" the Ligottis' monthly mortgage payments and "filed for foreclosure." (Comp. ¶¶ 19, 20). "The Defendant has failed or otherwise refused to respond to Plaintiff's request for modification as well as provide a sufficient response to Plaintiff's QWR. " (Comp. ¶ 21).

## ARGUMENT

### I.   DITECH IS NOT A DEBT COLLECTOR AND THEREFORE THE FDCPA CLAIM FAILS.

By the allegations in the complaint, Ditech is not a debt collector and therefore the FDCPA claim fails as a matter of law. "To make out a claim under the FDCPA, Plaintiff must show that (1) he has been the object of collection activity arising from consumer debt, (2) the defendant is a "debt collector" as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." Carrington v. Chrysler Fin., No. 10-CV-1024 NGG VVP, 2010 WL 1371664, at *1 (E.D.N.Y. Apr. 6, 2010) (Garaufis, J.) (internal quotations and citations omitted). Under the FDCPA, a "debt collector" is defined as:

> Any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). The FDCPA "excludes . . . loan servicers who obtain a debt prior to default, from the definition of an FDCPA debt collector. When a loan servicer obtains an account prior to its default, that loan servicer operates as a creditor, not a debt collector, for the purposes of the FDCPA." ValleCastro v. Tobin, Melien & Marohn, No. 3:13-cv-01441-SRU, Ruling and Order, Dk. No. 55, at 5 (D. Conn. Dec. 16, 2014) (Underhill, J.) (collecting cases).

Here, the allegations in the Complaint are insufficient to establish that Ditech, the current servicer, is a "debt collector."  The Ligottis have alleged that Ditech is a successor in interest to GMAC and currently holds the Mortgage by assignment, and that the Ligottis have been and continued to make monthly payments  (Comp. ¶¶ 12-14 ("Plaintiffs have made monthly payments since January 2013 pursuant to the permanent loan modification agreement…"). However, nowhere do the Ligottis allege that they were in default at the time GMAC assigned the Mortgage to Ditech.  See Caires v. JP Morgan Chase Bank, N.A., 880 F. Supp. 2d 288, 306 (D. Conn. 2012) ("It is well settled that the FDCPA applies only to persons who collect the debts of others and does not apply to those who collect their own debts.") (collecting cases); 15 U.S.C. §§ 1692a(4), (6)(A) and(F); Brumberger v. Sallie Mae Serv. Corp., 84 Fed. Appx. 458, 459 (5th Cir. 2004) (affirming dismissal of FDCPA claim against student loan servicer because "[b]y its plain terms the FDCPA does not apply" absent an allegation that plaintiff "was in default at the time [the loan servicer] began servicing his loans"); Garrett v. BNC Mortg. Inc., 929 F. Supp. 2d 1120, 1128 (D. Colo. 2013) (holding that plaintiffs failed to state a claim against loan servicer under the FDCPA because they did not allege that the loan servicer acquired servicing rights after default); Edmond v. Am. Edu. Serv., No. 10-0578, 2010 WL 4269129, at *5 (D.D.C. Oct. 28, 2010) (Bates, J.) (granting motion to dismiss on plaintiff's FDCPA claims because "[a]bsent an allegation that plaintiff's loan was in default when [the loan servicer] acquired it, [the loan servicer] is not a debt collector and is not subject to the FDCPA"); 15 U.S.C. § 1692a(6)(F).  To the contrary, the Ligottis allege that after GMAC assigned the mortgage (on or about May 3, 2013), the "Plaintiffs" "made" each monthly payment.  (Comp. ¶ 13).

## II.   NO PRIVATE CAUSE OF ACTION UNDER HAMP

"Home Affordable Modification Program" does not provide for a private cause of action and therefore the claim should be dismissed.  "Under HAMP, loan servicers voluntarily enter into a contract, called a Servicer Participation Agreement ("SPA"), with [Fannie Mae], which acts as HAMP administrator."  Maldonado v. AMS Servicing LLC, NO. 11-40219, 2012 WL 220249, at *6 (D. Mass. Jan. 24, 2012) (Saylor, J.).  Courts have uniformly held that HAMP does not create a private right of action for borrowers against loan servicers nor may a borrower enforce the SPA as a third party beneficiary.  See e.g., Wheeler v. Citigroup, 938 F. Supp. 2d 466, 471 (S.D.N.Y. 2013); Miller v. Chase Home Finance, LLC, 677 F.3d 1113, 1116 (11th Cir.2012) (no express or implied private right of action under HAMP); Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 559 n. 4 (7th Cir.2012) ( "HAMP does not create a private federal right of action for borrowers against servicers" and "borrowers were not intended third-party beneficiaries of the SPAs"); Sinclair v. Citi Mortgage, Inc., 519 Fed. App'x. 737, 738 (3d Cir. 2013) ("The HAMP is a 'foreclosure mitigation program managed jointly by the Department of the Treasury and the Department of Housing and Urban Development' that 'does not provide a private right of action.'").[2]  As a result, any claim for violation of HAMP fails.

---

[2] See also Griffith–Fenton v. Chase Home Finance, No. 11 CV 4877, 2012 WL 2866269, at *3 (S.D.N.Y. May 29, 2012) ("HAMP does not provide a private cause of action, nor may plaintiff enforce the agreement as a third-party-beneficiary."); Rivera v. Bank of Am. Home Loans., No. 09 CV 2450 LB, 2011 WL 1533474, at *6 (E.D.N.Y. Apr. 21, 2011) ("With very few exceptions, almost all federal courts to have addressed this precise issue have rejected borrowers' claims to enforce the Servicer Participation Agreements as third party beneficiaries.") (collecting cases); Thomas v. U.S. Bank Nat. Ass'n, 474 B.R. 450, 459 (D.N.J. 2012) ("[F]ederal courts have continued to hold that HAMP does not provide for a private right of action.  Additional federal courts have held that the HAMP Guidelines, effectuated through the servicer's execution of an SPA, may not be enforced by a mortgagee under a third-party beneficiary theory. Any violation of the SPA or applicable HAMP Guidelines may be enforced only by the Treasury Department, Fannie Mae, or Freddie Mac."); Shaffery v. Bank of Am., N.A., No. CIV. 14-6123, 2015 WL 1189622, at *2 (D.N.J. Mar. 16, 2015).

III.      **THE ACCOUNTING CLAIM FAILS AS A MATTER OF LAW**

There is no fiduciary relationship between the Ligottis and Ditech therefore the accounting claim fails as a matter of law. Under Massachusetts law, an accounting is an equitable remedy available only where there is no adequate remedy at law and there exists a fiduciary relationship.  See Chedd-Angier Production Co., Inc. v. Omni Publications Intern., Ltd.,  756 F.2d 930, 937 (1st Cir. 1985) ("Under Massachusetts law, an equitable accounting is available only if there exists a fiduciary or trust relationship between the parties."). "Equitable relief in the nature of an accounting is available where there is a fiduciary relationship between the parties and damages are due one of the parties following a fiduciary breach or fraud." Holland v. Burke, No. 200500122A, 2008 WL 4514664, at *11 (Mass. Super. Ct. June 18, 2008) (Connon, J.); see also Ball v. Harrison, 314 Mass. 390, 392 (1943).

Here, the Ligottis have not alleged a breach of fiduciary duty by Ditech which would entitle them to the remedy of an equitable accounting.  Nor can they.  Ditech did not owe the Ligottis a fiduciary duty as a matter of law.  Gavin v. Sovereign Bank, No. 06-12314-DPW, 2008 WL 2622839, at *7 (D. Mass. June 30, 2008) (Woodlock, J.) ("The relationship between a lender and a borrower generally does not give rise to a fiduciary duty."); see also Corcoran v. Saxon Mortgage Servs., Inc., No. 09-11468-NMG, 2010 WL 2106179, at *4 (D. Mass. May 24, 2010) (Gorton, J.) ("under Massachusetts law, neither a mortgage holder nor its servicer owes a fiduciary duty to a borrower).  Even if there was a fiduciary obligation, the Ligottis have an adequate remedy at law – a claim for breach of contract and therefore has no independent equitable right to an accounting.

## IV.   **THE RESPA CLAIM FAILS AS A MATTER OF LAW**[3]

Ligottis' RESPA claim fails as a matter of law because they have failed to plead sufficient facts to establish a violation of RESPA and even if they did, they have not alleged any actual damages which were the result of Ditech's alleged failure to respond to the request.

RESPA requires loan servicers to respond to qualified written requests ("QWR").  A "qualified written request" is a "written request" that identifies the "name and the account of the borrower" and describes the "reasons for the belief" that "the account is in error."  12 U.S.C. § 2605(e).[4]  The information sought through a QWR must relate to the servicing of a loan.  12 U.S.C. § 2605(e)(1)(A); De Vary v. Countrywide Home Loans, Inc., 701 F.Supp.2d 1096, 1106 (D. Minn 2010) (RESPA does not require a servicer to respond to any question that a borrower may ask-no matter how broad, vague or far afield" ); Gates v. Wachovia Mortg, FSB, No. 09-02464, 2010 WL 2606511, at * 3 (E.D. Cal June 28, 2010) ("Courts routinely interpret section 2605 as requiring a QWR to relate to the servicing of a loan, rather than the creation or modification of  a loan.").  Thus to state a claim under RESPA, the complaint must allege among other things the specific defendant to whom the request was issued, the date the request was issued, and the substance of the request.  Socca v. Cendant Mortgage Corp., Civil Action No. 04-704, 2004 WL 2536837 at *3 (E.D. Pa. Nov. 9, 2004) (dismissing a RESPA QWR claim in part because "[i]n his amended complaint plaintiff never claims that he sent defendant a qualified written request…"); Delino v. Platinum Community Bank, 628 F.Supp.2d 1226, 1232 (S.D. CA. 2009) (court concluded that mere allegation that defendants "failure to respond to Plaintiff's QWR" is insufficient to state a claim under RESPA); see also Gutierrez v. PNC Mortgage, Civil

---

[3] Absent from the Complaint is the identification of any particular subsections of RESPA Ditech allegedly violated.

[4] This statutory requirement is supplemented by "Regulation X" 12 C.F.R. 1024.35 (e).

No. 10cv01770  2012 WL 1033063 * 8 (S.D. Ca March 26, 2012) ("Without alleging more, the simple assertion that Defendants failed to comply with the statute is not enough.")

Absent from the complaint are any allegations related to the alleged QWR issued by the Ligotttis.  The Plaintiffs sole allegations are conclusory and fail to provide the specificity required to determine if the request was in fact a QWR.  Specifically, the Plaintiffs have alleged that:

- The Defendant failed or otherwise refused to respond to the Plaintiff's request for modification as well as provide a sufficient response to Plaintiff's QWR.  (Comp. ¶ 21);

- The Defendant failed or otherwise refused to respond to Plaintiff's qualified written request for information about his mortgages and the current holder prior to the foreclosure proceedings.  (Comp. ¶ 46)

The Plaintiffs do not identify to whom the request was made, when the request was made, the specific information sought, how the defendant failed to respond, and whether the statutory period expired.  See Mantz v. Wells Fargo Bank, N.A., Civil Action No. 09-12010-JTL, 2011 WL 196915 (D. Mass Jan. 19, 2011).

Even assuming arguendo that the Ligottis have alleged sufficient facts to establish both that they issued a QWR and that Ditech failed to respond, they have failed to allege that they suffered "actual damages" as a result of Ditech's alleged failure to respond to requests for information.  Instead, the Ligottis have alleged they "suffered emotional distress, financial loss, and pending further damages from Defendant's scheduled foreclosure sale of his primary residence."  (Comp. ¶ 48.).  These conclusory allegations cannot support a RESPA claim.  See Diedrich v. Ocwen Loan Servicing LLC, 2015 WL 1885630 *8 (E.D. Wis. Apr. 24, 2015)

("Conclusory statements of stress not sufficient.")  Nowhere in the Complaint do the Ligottis

allege how the failure to respond to their request(s) caused them "emotional distress."  See e.g.,

Fournier, 2014 WL 421295, at *4 (dismissing RESPA claim where plaintiff "fail[ed] to state

how the Defendants' alleged violations of RESPA [were] the proximate cause of her [emotional

distress]").  As a result, the RESPA claim must be dismissed.

## V.      THE BREACH OF CONTRACT AND COVENANT OF GOOD FAITH CLAIMS FAILS AS A MATTER OF LAW

The Workout Plan is unenforceable because it lacks consideration and even if it was

enforceable Ditech by issuing the Permanent Modification Offer complied with its obligations

and therefore the claim fails as a matter of law.

A valid contract must be supported by consideration to be enforceable.  See City of

Revere v. Boston/Logan Airport Association, LLC, 443 F.Supp2d 121, 126 (D. Mass. 2006);

Neuhoff v. Marvin Lumber and Cedar Co., 370 F.3d 197, 201 (1st Cir. 2004)  ("A contract must

have consideration to be enforceable and in order for a contract to have valid consideration, the

contract must be a bargained for exchange in which there is a legal detriment of the promissee or

a corresponding benefit to the promisor.")  "The well settled rule in the field of contracts has

long been that performance of a pre-existing legal duty that is neither doubtful nor subject to

honest and reasonable dispute is not valid consideration where the duty is owed to the promisor."

In re Loyd, Carr & Co., 617 F.2d 882, 890 (1st Cir. 1980)

In this case, each payment made by the Ligottis was applied towards satisfying a pre-

existing duty.  See Belyea v. Litton Loan Servicing LP, Civil Action No. 10-10931 DJC, 2011

WL 2884964 (D. Mass. July 15, 2011);   See Bosque v. Wells Fargo, 762 F.Supp.2d. 342, 352

(D.Mass. 2011) ( "modified mortgage payments standing alone would not likely constitute

cognizable consideration under the TPP.").  Absent from the complaint is any legal detriment

assumed by the Ligottis to support a valid contract.  <u>See</u> Restatement (Second) of Contracts 17

(the formation of a contract requires a baring in which there is a manifestation of mutual assent

to the exchange and a consideration).    Nowhere do the Ligottis allege that they were required to

provide documents to support their current income or obtain credit counseling.  <u>See</u> <u>Kiluk v</u>

<u>Select Portfolio Servicing, Inc.</u>, Civil Action No. 11-10731 FSD, 2011 WL 8844639 (D. Mass

Dec 19 2011) (recognizing that conditions of a TPP may provide new legal detriments to support

a contract).  As a result, the Workout Plan is unenforceable.

Even if the Workout Plan is enforceable, it imposes only an obligation upon Ditech to

offer a permanent loan modification agreement.  An obligation that it complied with and

therefore the claim fails as a matter of law.  <u>Thomas v. JP Mortgage Chase & Co.</u>, 811 F.Supp.2d

781, 796 (S.D. N.Y. 2011) (dismissing a claim for breach of a TPP finding servicer complied

with its obligations by denying the modification)

<u>**CONCLUSION**</u>

Wherefore, for the above reasons, Ditech request that the Court dismiss all of the claims

asserted against it with prejudice.

Dated: February 13, 2017                          Defendant,
                                                  DITECH FINANCIAL LLC,
                                                  By its attorneys,

                                                  <u>*/s/ Richard Briansky*</u>
                                                  Richard Briansky (BBO# 632709)
                                                  Amy B. Hackett (BBO# 676345)
                                                  McCarter & English LLP
                                                  265 Franklin Street
                                                  Boston, MA 02110
                                                  Phone: (617) 449-6500
                                                  Fax:    (617) 607-9312
                                                  rbriansky@mmcarter.com
                                                  ahackett@mccarter.com

## <u>CERTIFICATE OF SERVICE</u>

I, Richard Briansky, hereby certify that this document was filed through the Court's ECF System on February 13, 2017 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Richard Briansky
Richard Briansky